

**FILED**
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JUN 0 4 2019

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**NEW YORK LIFE INSURANCE COMPANY**                                     **PLAINTIFF**

v.                                   **CASE NO.**   4:19-cv-386-KGB

**TIMOTHY CLEVENGER,**
**EMILY CLEVENGER PIERCE,**
**MATTHEW TIMOTHY CLEVENGER,**
**KATHERINE CLEVENGER, and**
**The ESTATE of MARGARET CLEVENGER**                                     **DEFENDANTS**

### COMPLAINT

Plaintiff, New York Life Insurance Company (the "Company"), by and through its undersigned counsel, for its Complaint in Interpleader alleges as follows:

### PARTIES

1.      The Company is a mutual insurance company organized and existing under the laws of the State of New York with its principal place of business at 51 Madison Avenue, New York, New York.  The Company is duly authorized to do business in the State of Arkansas.

2.      Upon information and belief, Defendant Timothy Clevenger is an adult citizen of Arkansas and is incarcerated and awaiting trial in Little Rock, Arkansas.

3.      Upon information and belief, Defendant Emily Clevenger Pierce is an adult citizen of Arkansas and is domiciled in Pulaski County, Arkansas.

4.      Upon information and belief, Defendant Matthew Timothy Clevenger is an adult citizen of Arkansas and is domiciled in Pulaski County, Arkansas.

5.      Upon information and belief, Defendant Katherine Clevenger is an adult citizen of Utah and is domiciled in Salt Lake County, Utah.

This case assigned to District Judge__Baker____
and to Magistrate Judge__Volpe____

6.     Upon information and belief, there has been no process commenced to administer the Estate of Margaret Clevenger.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction under 28 U.S.C. § 1332(a) in that the parties are of diverse citizenship and the amount in controversy exceeds $75,000.00. The Company is a New York citizen for diversity purposes. Upon information and belief, the Defendants are citizens of Arkansas and Utah.

8.     This Court also has jurisdiction under 28 U.S.C. § 1335 in that the Defendants are of diverse citizenship and the amount in controversy exceeds $500.00. There is minimal diversity between the claimants under State Farm Fire & Casualty Co. v. Tashire, 386 U.S. 523 (1967). Upon information and belief, the defendants are citizens of Arkansas and Utah.

9.     Venue is proper in this federal district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district. Venue is also proper in this Court pursuant to 28 U.S.C. § 1397 because one or more of the claimants resides in this judicial district.

## CAUSE OF ACTION IN INTERPLEADER

10.     The Company issued Individual Life Insurance Policy No. 76 057 624 to Margaret Clevenger (the "Insured") with a contract date of August 23, 2000. *A specimen copy of the Policy is attached hereto as Exhibit 'A'.*

11.     By Life Insurance Application dated July 12, 2000, the Insured designated her spouse, Timothy B. Clevenger, as sole primary beneficiary to the Policy proceeds and the "children of the marriage" as secondary beneficiaries to the Policy proceeds, in equal shares. *A copy of the Life Insurance Application dated July 12, 2000 is attached hereto as Exhibit 'B'.*

12.     Upon information and belief, the Insured and Timothy B. Clevenger have three adult children together: Emily Clevenger Pierce, Matthew Timothy Clevenger and Katherine Clevenger.

13.     Upon information and belief, the Insured died on September 3, 2018 and her death was ruled a homicide. *A copy of the Insured's Certificate of Death is attached hereto as Exhibit 'C'.*

14.     As a result of the death of the Insured, Policy death benefits in the amount of $250,000.00 (the "Death Benefit") became due to a beneficiary or beneficiaries and the Company concedes liability to that effect.

15.     Upon information and belief, Timothy Clevenger was criminally charged for the unlawful killing of the Insured.

16.     Arkansas Code Ann. § 18-4-205(a) ("Arkansas Slayer Statute") provides, in relevant part:

> Insurance and annuity proceeds payable to a slayer as the beneficiary or assignee of a policy or certificate of insurance or an annuity contract on the life of the decedent, or in any other manner payable to the slayer by virtue of the slayer having survived the decedent, shall be paid to the decedent's estate.

*Arkansas Code Ann. § 18-4-205(a) (2013).*

17.     The Arkansas Slayer Statute defines "Slayer" as any person who is:

> (A)     Convicted by a court of competent jurisdiction of or pleads guilty or nolo contendere to the unlawful killing of the decedent;

*Arkansas Code Ann. § 18-4-202 (2013).*

18.     If Timothy is disqualified from receiving the Death Benefit in accordance with the Arkansas Slayer Statute, the Death Benefit would be payable to the Insured's Estate. *See Arkansas Code Ann. § 18-4-205(a).*

3

19.    The Policy's Beneficiary Rules provide as follows:

The stated shares of the proceeds will be paid to any first beneficiaries who survive the Insured. If no first beneficiaries survive, payment will be made to any beneficiary surviving in the second class, and so on. Beneficiaries in the same class who survive have an equal share in the proceeds, unless the shares are stated otherwise.

*See Exhibit 'A', page 4.*

20.    If Timothy Clevenger is disqualified from receiving the Death Benefit in accordance with the Arkansas Slayer Statute and deemed to have predeceased the Insured, the Death Benefit would be payable to Emily Clevenger Pierce, Matthew Timothy Clevenger and Katherine Clevenger, in equal shares, as the designed Secondary Beneficiaries on the Policy Application. *See Ex. A, page 4, and Ex. B.*

21.    By "Death Benefit Proceeds Form" dated September 18, 2018, Timothy Clevenger asserted a claim for the Death Benefit. *A copy of the Death Benefit Proceeds Form dated September 18, 2018 is attached hereto as **Exhibit 'D'.***

22.    There have been no other claims for the Death Benefit. Under the circumstances, the Company cannot determine factually or legally who is entitled to the Death Benefit. By reason of the actual or potential claims of the interpleading defendants, the Company is or may be exposed to multiple liability.

23.    The Company is ready, willing, and able to pay the Death Benefit, plus applicable interest, if any, in accordance with the terms of the Policy to whomever this Court shall designate.

24.    As a mere stakeholder, the Company has no interest (except to recover its attorneys' fees and cost of this action) in the Death Benefit and respectfully requests that this Court determine to whom this should be paid.

25.     Accordingly, the Company seeks to deposit into the Court the Death Benefit, plus claim interest, if any, for disbursement in accordance with the judgment of this Court.

26.     The Company has not brought this Complaint in Interpleader at the request of any of the Defendants.   There is no fraud or collusion between the Company and any of the Defendants.  The Company brings this Complaint of its own free will and to avoid being vexed and harassed by conflicting and multiple claims.

**WHEREFORE**, the Company prays that the Court enter judgment:

(a)     appointing an Administrator to Administer the Estate of Margaret Clevenger;

(b)     requiring the Defendants to answer this Complaint in Interpleader and litigate their claims between themselves for the Death Benefit;

(c)     enjoining the Defendants from instituting or prosecuting any proceeding in any state or United States court affecting the Death Benefit and/or the Policy;

(d)     requiring that the Defendants settle and adjust between themselves, or upon their failure to do so, this Court settle and adjust the claims and determine to whom the Death Benefit should be paid;

(e)     permitting the Company to deposit the amount of the Death Benefit, plus applicable interest, if any, into the Court or as this Court otherwise directs to be subject to the order of this Court and to be paid out as this Court shall direct;

(f)     discharging the Company from any and all further liability to Defendants relating in any way to the Policy and/or the Death Benefit upon payment of the Death Benefit into the Registry of this Court or as otherwise directed by this Court;

(g)     awarding the Company its attorneys' fees and costs in their entirety; and

(h)     awarding the Company any other and further relief that this Court deems just and proper.

Dated: June 4, 2019

Respectfully submitted,

CROSS, GUNTER, WITHERSPOON
   & GALCHUS, P.C.
500 President Clinton Ave., Suite 200
Little Rock, Arkansas 72201
Phone:  (501) 371-9999
Fax:  (501) 371-0035
E-Mail:  sbingham@cgwg.com

By: _____
M. Stephen Bingham, Ark. Bar No. 83023

**ATTORNEYS FOR   PLAINTIFF**

242804



**LIFE INSURANCE POLICY**

**MARGARET M CLEVENGER**

**76 057 624**

**INSURED --** MARGARET M CLEVENGER
**POLICY NUMBER --** 76 057 624
**POLICY DATE --** AUGUST 23, 2000

# NYLIFE Insurance Company of Arizona

**NYLIFE Insurance Company of Arizona** will pay the benefits of this policy in accordance with its provisions.  The pages which follow are also part of this policy.

**Right to Examine Policy.**  Please examine your policy.  Within 10 days after delivery, you can return the policy to NYLIFE Insurance Company ~~THIS PROVISION DOES NOT APPLY~~ a written request for a full refund of premium. Upon such a request, the policy will be void from the start, and a full premium refund will be made.

**Payment of Premiums.**  The premiums for this policy are shown in the Premium Schedule on the Policy Data page.  They are payable in accordance with the Premiums section.

This policy is a legal contract between the policyowner and the Company.

**READ YOUR POLICY CAREFULLY FOR FULL DETAILS.**

This policy is executed as of the date of issue shown on the Policy Data page.

President

Secretary

**TERM POLICY TO AGE 90**
Renewable Each Year to Age 90 as Stated in Premiums Section.

Term Policy Convertible for 10 Years as Stated in the Conversion Section.

Premiums Payable as Shown in Premium Schedule, with Premiums in 11th and
   Later Policy Years Subject to Change.

This Policy is Non-Participating.

**AZ98-70.26**

INSURED --   MARGARET M CLEVENGER                          AGE  38  FEMALE

POLICY NUMBER --   76 057 624                        CLASS OF RISK -  NON-SMOKER

POLICY DATE --   AUGUST 23, 2000                     DATE OF ISSUE -  AUGUST 23, 2000

OWNER --   INSURED

PLAN       TERM POLICY TO AGE 90  WITH
           DISABILITY WAIVER OF PREMIUM (WP) AND
           ACCELERATED BENEFITS (AB)

AMOUNT      FACE AMOUNT                                          $250,000.00

BENEFICIARY
(subject to change)   AS DESIGNATED ON APPLICATION, OR AS SUBSEQUENTLY CHANGED
                      IN ACCORDANCE WITH THE CHANGE OF BENEFICIARY PROVISIONS

CORRESPONDENCE ADDRESS                     HOME OFFICE ADDRESS
NYLIFE INSURANCE COMPANY OF ARIZONA        NYLIFE INSURANCE COMPANY OF ARIZONA
PO BOX 130539                              4343 NORTH SCOTTSDALE ROAD
DALLAS                                     SUITE 220
TX 75313-0539                              SCOTTSDALE, AZ 85251

**POLICY DATA**                            **NYLIFE INSURANCE COMPANY OF ARIZONA**

PREMIUM SCHEDULE
PREMIUMS PAYABLE AT  MONTHLY INTERVALS, AS FOLLOWS (SEE ENDORSEMENT HEREON)

| BEGINNING AS OF<br>8-23-2000<br>POLICY YEARS | TOTAL<br>POLICY<br>PREMIUM** | BASIC<br>POLICY<br>PREMIUM | WP∂ |
|---|---|---|---|
| 1-10 | $27.50 | $25.00 | $2.50 |

SEE POLICY DATA PAGE 2A FOR CONTINUATION OF PREMIUM SCHEDULE

** TOTAL PREMIUM FOR ALL COVERAGE UNDER POLICY AND RIDER(S)

∂ THE PREMIUM FOR THE DISABILITY WAIVER OF PREMIUM (WP) RIDER IN THE 11TH AND LATER POLICY
YEARS IS 10% OF THE PREMIUM FOR THE BASIC POLICY. THE PREMIUM FOR THE WP RIDER WILL
INCREASE OR DECREASE WHEN THE POLICY PREMIUM CHANGES. THE WP RIDER ENDS ON  8-23-2027.

**POLICY DATA**                                   **NYLIFE INSURANCE COMPANY OF ARIZONA**

CONTINUATION OF PREMIUM SCHEDULE

POLICY NUMBER     76 057 624

ON THE LIFE OF     MARGARET M CLEVENGER

AFTER THIS POLICY IS IN FORCE FOR 10 YEARS FROM ITS POLICY DATE, ALL SCHEDULED POLICY PREMIUMS
ARE SUBJECT TO CHANGE.  HOWEVER, THE ACTUAL PREMIUM IN A SPECIFIC POLICY YEAR WILL NEVER BE GREATER
THAN THE MAXIMUM PREMIUM FOR THAT YEAR.

SEE THE PREMIUMS SECTION ON PAGE 6 FOR FURTHER DETAILS.

PREMIUMS PAYABLE AT  MONTHLY INTERVALS, AS FOLLOWS (SEE ENDORSEMENT HEREON)

| POLICY YEAR | SCHEDULED PREMIUM& | MAXIMUM PREMIUM& |
|---|---|---|
| 11 | $44.50 | $117.50 |
| 12 | $48.00 | $125.00 |
| 13 | $52.25 | $134.25 |
| 14 | $57.25 | $143.50 |
| 15 | $61.75 | $154.50 |
| 16 | $66.50 | $167.00 |
| 17* | $71.75 | $180.00 |
| 18 | $77.50 | $193.75 |
| 19 | $83.50 | $208.00 |
| 20 | $90.75 | $222.25 |
| 21 | $99.50 | $235.75 |
| 22 | $107.75 | $250.00 |
| 23 | $116.75 | $267.00 |
| 24 | $127.00 | $287.00 |
| 25 | $137.50 | $312.25 |
| 26 | $149.50 | $344.00 |
| 27 | $161.75 | $381.75 |
| 28 | $175.25 | $422.25 |
| 29 | $189.50 | $466.00 |
| 30 | $205.75 | $510.25 |
| 31 | $224.00 | $555.00 |
| 32 | $245.25 | $602.75 |
| 33 | $269.75 | $658.00 |
| 34 | $297.75 | $724.00 |
| 35 | $330.75 | $805.50 |
| 36 | $369.25 | $905.00 |
| 37 | $414.75 | $1,022.00 |
| 38 | $466.50 | $1,154.50 |
| 39 | $542.75 | $1,300.00 |
| 40 | $627.75 | $1,456.00 |
| 41 | $722.25 | $1,623.00 |
| 42 | $827.75 | $1,805.25 |
| 43 | $950.00 | $2,010.75 |
| 44 | $1,091.75 | $2,246.00 |
| 45 | $1,258.75 | $2,518.00 |
| 46 | $1,454.25 | $2,831.00 |
| 47 | $1,676.25 | $3,178.25 |
| 48 | $1,926.00 | $3,558.75 |
| 49 | $2,200.75 | $3,965.25 |
| 50 | $2,503.50 | $4,400.50 |
| 51 | $2,831.75 | $4,859.25 |
| 52 | $3,191.25 | $5,349.00 |

&   BASE POLICY PREMIUMS ONLY

*   8-23-2017 IS THE FINAL DATE FOR CONVERSION

POLICY DATA                                    **NYLIFE INSURANCE COMPANY OF ARIZONA**

**PAGE 2A**
**AZ9870-2A**

**WE & YOU**

In this policy, the words "we", "our" or "us" refer to NYLIFE Insurance Company of Arizona, and the words "you" or "your" refer to the owner of this policy.

When you write to us, please include the policy number, the Insured's full name, and your current address

## CONTENTS

| SECTION | PROVISIONS | PAGE |
|---------|-----------|------|
|  | POLICY DATA PAGES |  |
| ONE | LIFE INSURANCE BENEFIT | 4 |
| TWO | OWNER AND BENEFICIARY | 4 |
| THREE | CONVERSION | 5 |
| FOUR | PREMIUMS | 6 |
| FIVE | PAYMENT OF POLICY PROCEEDS | 7 |
| SIX | GENERAL PROVISIONS | 7-8 |
|  | APPLICATION - Attached to the Policy |  |
|  | RIDERS OR ENDORSEMENTS (IF ANY) - Attached to the Policy |  |

Note:  This policy is a legal contract between the policyowner and the Company.
**PLEASE READ THIS POLICY CAREFULLY FOR FULL DETAILS.**

# SECTION ONE - LIFE INSURANCE BENEFIT

1.1 **Is A Life Insurance Benefit Payable Under This Policy?** We will pay the life insurance proceeds to the beneficiary promptly when we have proof that the Insured died while this policy was in effect and if premiums have been paid as called for in the Premiums section.

1.2 **What Is The Amount Of Life Insurance Proceeds Which Are Payable Under This Policy?** These proceeds will include the face amount of this policy and any other benefits from riders which are payable because of the Insured's death, all as stated in the policy. In accordance with the Premiums section, when determining these proceeds an adjustment for the last premium may be made.

# SECTION TWO - OWNER AND BENEFICIARY

2.1 **Who Is The Owner Of This Policy?** The owner of this policy is stated on the Policy Data page. In this policy, the words "you" and "your" refer to the policyowner.

2.2 **Can A Successor To The Owner Be Named?** A successor owner can be named in the application, or in a notice you sign that gives us the facts that we need. If you die before the successor owner, the successor owner will become the new owner. If no successor owner survives you and you die before the Insured, your estate becomes the new owner.

2.3 **How Do You Change The Owner Of This Policy?** You may change the owner of this policy, from yourself to a new owner, in a notice you sign that gives us the facts that we need. This change will take effect as of the date you signed the notice, subject to any payment we made or action we took before recording the change. We may require that this change be endorsed in the policy. When this change takes effect, all rights of ownership will pass to the new owner. Changing the owner or successor owner cancels any prior choice of owner, but does not change the beneficiary.

2.4 **Can More Than One Beneficiary Be Named For This Policy?** One or more beneficiaries for any life insurance proceeds can be named in the application, or in a notice you sign that gives us the facts that we need. If more than one beneficiary is named, they can be classed as first, second, and so on. If 2 or more are named in a class, their shares in the proceeds can be stated. The stated shares of the proceeds will be paid to any first beneficiaries who survive the Insured. If no first beneficiaries survive, payment will be made to any beneficiary surviving in the second class, and so on. Beneficiaries in the same class who survive have an equal share in the proceeds, unless the shares are stated otherwise.

2.5 **Can You Change A Beneficiary?** While the Insured is living, you can change a beneficiary in a notice you sign that gives us the facts that we need. This change will take effect as of the date you signed the notice, subject to any payment we made or action we took before recording the change.

2.6 **What Happens If No Beneficiaries Are Living When The Proceeds Become Payable?** If no beneficiary for the life insurance proceeds, or for a stated share, survives the Insured, the right to these proceeds, or this share, will pass to you. If you are the Insured, this right will pass to your estate.

2.7 **What If The Beneficiary And The Insured Die At The Same Time?** Unless stated otherwise in the policy or in your signed notice that is in effect at the Insured's death, if any beneficiary dies at the same time as the Insured or within 15 days after the Insured but before we receive proof of the Insured's death, we will pay the proceeds as though that beneficiary died first.

# SECTION THREE - CONVERSION

3.1   **Can The Term Insurance Under This Policy Be Converted?**  You can have all or part of the term insurance of this policy exchanged for a new life or endowment policy on the Insured.  This type of change is called a conversion.  A conversion can be made without proof of insurability.

3.2   **When Can This Term Insurance Be Converted?**  You can convert this policy at any time on or before the final date for  conversion. The final date for conversion is the 10th policy anniversary. Within 31 days of that date, we must receive your application and the first premium for the new policy.  The application must also be signed by the Insured.  In order to qualify for a conversion, this policy must be in effect with premiums paid to the date of conversion.

3.3   **What Happens When The Term Insurance Is Converted?**  Any term insurance that is converted ends when the new policy takes effect.  If only a part of the face amount of this policy is converted, the rest of the insurance may be continued under this policy if it meets our limits for minimum amount.  If it does not meet those limits, this policy will end at the time the new policy takes effect.  If this policy ends due to a conversion, all riders attached to this policy will also end.

3.4   **Will You Receive A Conversion Credit?**  We may provide a conversion credit when this policy is converted.  If provided, this credit will be used to reduce premiums that are due during the first policy year of the new policy.  At the time of the conversion, we will tell you the amount, if any, of the credit.  Where required by law or regulation, the amount of this credit is on file with the insurance official in the state or district in which this policy is delivered.

3.5   **What Type of Insurance will the New Policy Provide?**  The new policy may be on any life or endowment plan which may be offered on the date of conversion by NYLIFE Insurance Company of Arizona or one of its affiliated companies.  The policy date of the new policy will be the date of conversion. The new policy may not be on a plan which provides term insurance.  It will have the same provisions and be subject to the same limitations as are in the series of policies being offered on the date of conversion.  The premium for the new policy will be based on our new policy premium rates on the date of conversion, and the Insured's age on the birthday that is nearest that date.  The Insured's class of risk will be the same as it was for this policy.  However, if this policy is in a preferred risk class, the new policy will be on a preferred risk basis only if it meets our minimum amount and age limits for that class.

3.6   **For What Period Is The New Policy Contestable?**  The time periods of the new policy that relate to a suicide exclusion or to a contest of that policy will start on the date of issue of this policy.  However, in some cases, the new policy may be issued with a rider or with an additional amount of insurance that you requested and that required our agreement.  If this happens, the time periods for that rider or amount will start instead on the date of issue of the new policy.

3.7   **What Riders Are Available With The New Policy?**  You can have a waiver of premium rider made a part of the new policy if one is in effect under this policy on the date of conversion, but only if the Insured meets our issue age limits and is not totally disabled as defined in the waiver of premium rider in effect under this policy. However, if the Insured has recovered from a total disability that had gone on for at least 6 months in a row, you can have that rider only in a new policy for which premiums are payable for the rest of the Insured's life.

You can have an accidental death benefit rider made a part of the new policy if one is in effect under this policy on the date of conversion and if the Insured meets our issue age limits.  The amount of the rider may not be more than the amount of the benefit that ends under this policy at the time of conversion. No other riders can be made a part of the new policy, unless we agree.

# SECTION FOUR - PREMIUMS

**4.1 How Do You Pay Premiums?** Each premium is payable, while the Insured is living, on or before its due date as shown in the Premium Schedule on the Policy Data page. Premiums are payable at our Home Office or at one of our service offices.

The premiums for this policy can be paid at intervals of 3 months or 6 months, or once each year. The method we use to determine the premium rate for each of these intervals is the method that was in effect as of the policy date shown on the Policy Data page. The interval can be changed by paying the correct premium for the new interval. Premiums can be paid by any other method we make available.

**4.2 What Is The Grace Period?** We allow 31 days from the due date for payment of a premium. All insurance coverage continues during this grace period.

**4.3 What Will Happen If A Premium Is Not Paid?** If a premium is not paid by the end of the grace period, this policy will lapse and all insurance will end.

**4.4 How Can This Policy Be Renewed?** You can renew this policy year by year by paying the premiums shown on the Policy Data page. Premiums after the 10th policy anniversary are not guaranteed and may change in accordance with Section 4.5. Premiums must be paid to the date of renewal and the Insured must be age 89 or less.

**4.5 Do We Have The Right To Change Premiums?** The premium for this policy for the first 10 years is level and guaranteed, and is shown on the Policy Data page. We have the right to change the premiums for this policy that apply to the 11th and later policy years. Any such change will take effect on the policy anniversary which follows the date of the change.

Each year we will review the Scheduled Policy Premiums to determine if any changes in these premiums should be made. Any changes in premiums will be based on changes in future expectations for items such as investment earnings, mortality, persistency and expenses, including federal and state taxes. Any change will be made on a uniform basis for Insureds in the same class, based on sex, risk classification, issue age and duration since issue of such insurance. Any change in premiums will be made in accordance with the procedures and standards on file with the insurance official in the state or district in which the policy is delivered.

The actual premium payable for any year after the 10th policy year may be more than the corresponding scheduled premium shown for that year on the Policy Data page. However, the actual premium payable will never be greater than the maximum premium shown for that year.

**4.6 When Will This Policy End?** You can cancel this policy as of the due date of a premium. If this policy is still in effect on the anniversary on which the Insured is age 90, it will end on that date. It will also end for nonpayment of premiums.

**4.7 Can You Reinstate The Policy If It Ends?** Within 5 years after lapse, you can apply to reinstate the policy. We must have evidence of insurability that is acceptable to us. All overdue premiums must be paid, with interest at 6% per year from each of their due dates.

We do not need evidence of insurability if we receive the required payment within 31 days after the end of the grace period, but the Insured must be living when we receive it.

**4.8 Will a Premium Adjustment Be Made If The Insured Dies?** We will increase the life insurance proceeds by any part of a premium paid for the period after the policy month in which the Insured dies.

If the Insured dies during a grace period, we will reduce the proceeds by an amount equal to the premium for one policy month.

**Page 6**
**AZ9870-6**

# SECTION FIVE - PAYMENT OF POLICY PROCEEDS

5.1 **How Will Policy Proceeds Be Paid?** We will pay the life insurance proceeds in one sum.  These proceeds will bear interest compounded each year from the Insured's death to the date of payment.  We set the interest rate each year.  This rate will not be less than 8% per year.

# SECTION SIX - GENERAL PROVISIONS

6.1 **What Constitutes The Entire Contract?**  The entire contract consists of this policy, any attached riders or endorsements, and the attached copy of the application.  Only our Chairman, President, Secretary, or one of our Vice Presidents is authorized to change the contract, and then, only in writing.  No change will be made to this contract without your consent.  No agent is authorized to change this contract.

6.2 **How Important Is The Information You Provide In The Application For This Policy?**  In issuing this policy, we have relied on the statements made in the application.  All such statements are deemed to be representations and not warranties.  We assume these statements are true and complete to the best of the knowledge and belief of those who made them.  No statement made in connection with the application will be used by us to void the policy or to deny a claim, unless that statement is a material misrepresentation and is part of the application.

6.3 **Will We Be Able To Contest This Policy?**  We will not contest this policy after it has been in force during the lifetime of the Insured for 2 years from the date of issue.  Please refer to the Incontestability of Rider provision that may be in any rider or riders attached to this policy.

6.4 **Does This Policy Cover Suicide Of The Insured?**  Suicide of the Insured, while sane or insane within 2 years of the date of issue, is not covered by this policy.  In that event, this policy will end and the only amount payable will be the premiums paid to us.

6.5 **How Are The Dates Referred To In This Policy Measured?**  Policy years, months, and anniversaries are measured from the policy date, unless otherwise stated.

6.6 **How Is A Person's Age Calculated For the Purposes Of This Policy?**  Unless stated otherwise, when we refer to a person's age in this policy on a date other than a policy anniversary, we mean his or her age on the birthday which is nearest to the previous anniversary.  On a policy anniversary, a person's age is the age shown on the Policy Data page plus the number of policy years since the Policy Date.

6.7 **What Happens If A Person's Age Or Sex Has Been Stated Incorrectly?**  If the age or sex of an insured person is not correct as stated, any amount payable under this policy will be what the premiums paid would have purchased at the correct age and sex.

6.8 **Can Changes Be Made To This Policy?**  If we agree, you may have riders added to this policy, or have it changed to a smaller amount of insurance.

## SECTION SIX - GENERAL PROVISIONS (continued)

6.9      **Can You Assign Or Transfer The Policy?** While the Insured is living, you can assign this policy, or any interest in it.  If you do this, your interest and anyone else's, is subject to that of the assignee.  As owner, you still have the rights of ownership which have not been assigned.

6.10     **How Do You Assign The Policy?** You must provide us with a copy of the assignment.  We are not responsible for the validity of any assignment.  Any assignment will be subject to any payment we make or other action we take before we record the assignment.

6.11     **Can The Assignee Change The Owner Or Beneficiary?** An assignee cannot change the owner or beneficiary of this policy.  Any amount payable to the assignee will be paid in one sum.

6.12     **Are The Payments Made Under This Policy Protected Against Creditors?** Payments we make under this policy are, to the extent the law permits, exempt from the claims, attachments, or levies of any creditors.

6.13     **To Whom Should Payments For This Policy Be Made?** Any payment made to us by check or money order must be payable to NYLIFE Insurance Company of Arizona. When asked, we will provide a countersigned receipt, signed by our President or Secretary, for any premium paid to us.

6.14     **Is This Policy Subject To Any Law?** This policy is subject to all laws which apply.

6.15     **Is This Policy Participating?** This is a non-participating policy on which no dividends are payable.

# ENDORSEMENT
## CHECK-O-MATIC PREMIUM PAYMENT ARRANGEMENT

This policy is issued as part of a Check-O-Matic arrangement. Under this arrangement, each month we draw a check, draft or order, or we direct a fund transfer, on a specified bank account in order to pay the premium. The Check-O-Matic premium rate is in effect for your policy while it is in this arrangement.

If your policy is no longer in this arrangement, we will make a change so that premiums will be due (1) every three months if each of those premiums would be at least $12.50; (2) every six months if each of those premiums would be at least $15.00 and method (1) is not available; or (3) once each year if methods (1) and (2) are not available.

We will make this change so that (a) it takes effect on the due date of the first premium which follows, by at least two months, the date the arrangement ends for this policy, and (b) a premium, if payable, will be due on the anniversary of this policy.

**NYLIFE INSURANCE COMPANY OF ARIZONA**

Secretary

President

AZ0004-94 (Gen.)

**NYLIFE INSURANCE COMPANY OF ARIZONA**

**ENDORSEMENT**

**MODIFICATION OF SPOUSE'S PAID-UP INSURANCE PURCHASE OPTION (SPPO) RIDER**

This endorsement is made a part of the policy to which it is attached.

It may happen that the Owner of this policy is a beneficiary for life insurance proceeds under this policy, and is not the Insured's spouse. In this case, even if the SPPO Rider attached to this policy states otherwise, the Owner-beneficiary has the right to purchase paid-up life insurance on the life of the spouse. This purchase must be made within the 90 days after the Insured's death, in accordance with the provisions of the rider. The application for this insurance, signed by the Insured's spouse, must be received by the Company while the spouse is living. If it is not so received, and even if the SPPO Rider states otherwise, no paid-up life insurance will be payable under this endorsement or the rider, even if the Insured's spouse dies within the 90 days after the Insured's death.

It may happen that a Trust is the Owner and is a beneficiary for life insurance proceeds under this policy, and is authorized by the terms of the Trust instrument to purchase insurance on the life of the Insured's spouse. In this case, even if the SPPO Rider states otherwise, the Trust may purchase the paid-up life insurance. This purchase must be made in accordance with the provisions of the rider and as described in this endorsement. The Company has the right to obtain a copy of the Trust instrument.

Unless stated otherwise in this policy or in the policy for the paid-up insurance described in this endorsement, the beneficiary for that insurance will be the Owner, if living; otherwise, the estate of the Owner.

**NYLIFE INSURANCE COMPANY OF ARIZONA**

Secretary

President

AZ0001-94

# NYLIFE INSURANCE COMPANY OF ARIZONA

## ENDORSEMENT

## MODIFICATION OF POLICY PROVISIONS

This endorsement is made a part of the policy to which it is attached.  Any reference to an "Insured" in the language below means the Insured under the base policy.  Read this endorsement carefully.

The first 2 sentences of Section 3.2 of this policy are deleted.  The following language is substituted.

**When Can This Term Insurance Be Converted?**  You can request that this policy be converted at any time on or before the final date for conversion.  The final date for conversion is determined as follows.

1.  If, at the time this policy is issued, the Insured is between the ages of 15 through 45, the final date for conversion is the policy anniversary on which the Insured is age 55.
2.  If, at the time this policy is issued, the Insured is between the ages of 46 through 65, the final date for conversion is this policy's 10th anniversary.

**NYLIFE INSURANCE COMPANY OF ARIZONA**

President

Secretary

AZ0061-05

# NYLIFE INSURANCE COMPANY OF ARIZONA

## RIDER

## ACCELERATED BENEFITS (AB)

RECEIPT OF ACCELERATED BENEFITS MAY BE TAXABLE. ANY RECEIPT MAY ALSO AFFECT YOUR ELIGIBILITY FOR BENEFITS UNDER STATE OR FEDERAL LAW. YOU SHOULD CONSULT WITH YOUR PERSONAL TAX ADVISOR. DEATH BENEFITS, AND ANY CASH, LOAN OR ACCUMULATION VALUES, WILL BE REDUCED IF AN ACCELERATED BENEFIT IS PAID. THIS RIDER IS NOT INTENDED OR DESIGNED TO PROVIDE HEALTH, NURSING HOME OR LONG-TERM CARE INSURANCE. WE WILL DISCLOSE ANY REDUCED AMOUNT OF AN ACCELERATED BENEFIT IN THE DISCLOSURE STATEMENT. RECEIPT OF ACCELERATED BENEFITS MAY RESULT IN PAYMENT OF 100% OF THE POLICY FACE AMOUNT.

1. **What Benefit Is Provided By This Rider?**
This is a life insurance rider which pays accelerated death benefits as described below. Provided the policy is in force on the date we receive an election under this rider, we will make a payment of these death benefits in a single sum, one time only. This payment will be made to you as the Owner. We must have proof that the Insured under the basic policy has a life expectancy of 12 months or less.

The amount payable under this rider will equal: the Percentage Elected multiplied by the Eligible Proceeds; multiplied by the Discount Factor; minus an Administrative Fee of up to $150; minus the elected percentage of any unpaid policy loan.

2. **What Proceeds Are Eligible For Acceleration Under This Rider?** The total amount of Eligible Proceeds under this rider shall be determined as of the date we receive your application for benefits under this rider. This total sum shall equal:
(a) the policy face amount; plus
(b) any paid-up insurance additions under the policy or its riders; plus
(c) the amount payable under any rider providing a level amount of insurance.
However, any level term insurance rider shall not be considered part of the Eligible Proceeds under this rider, if its expiration date is within one year of the date we receive your application. Instead, such rider will be continued to its expiry date.

3. **What Percentage Of Eligible Proceeds Can Be Accelerated?** You can elect to receive the minimum accelerated death benefit of 25% of the Eligible Proceeds. You may also elect to receive an accelerated death benefit based on 50%, 75% or 100% of the Eligible Proceeds. However, in no event can this benefit be less than $25,000, or exceed $250,000 under all of our policies in force on the Insured. You may elect to receive an accelerated death benefit based on another percentage, or based on Eligible Proceeds in excess of $250,000, only if we agree.

4. **What Is The Discount Factor?** The Discount Factor is an adjustment which reduces the Eligible Proceeds. This adjustment will be based on our assumptions of the life expectancy of the Insured. We also will determine, based on these assumptions, the appropriate premium adjustment. The discount rate used in determining the Discount Factor will not exceed the greater of: (a) the current yield on 90-day Treasury bills; or (b) our current maximum adjustable policy loan interest rate, as permitted by law.

These adjustments are based upon procedures and standards on file with, or required by, the Insurance Department of the state in which this rider is delivered.

5. **How Do You Apply For An Accelerated Benefits Payment?** You must provide us with a written application for benefits under this rider. This application must specify the Percentage Elected. You must also provide us with the policy. Evidence of the Insured's reduced life expectancy which is satisfactory to us must be furnished. Such evidence must include a certification from a licensed physician that the Insured's life expectancy is 12 months or less. In addition, we reserve the right to have the Insured examined by a physician of our choice at our expense.

If the opinions of the Insured's physician and our physician differ, the Insured shall be examined by a third physician at our expense. This third physician must be acceptable to the Insured and to us. This third opinion shall be binding on us.

If the policy is subject to an irrevocable beneficiary designation or an assignment, you must provide us with a written consent by any such beneficiary or assignee to any payment under this rider.

Your application for benefits under this rider must be received by us more than one year prior to the expiration date of the policy.

(over)

AZ94-495

## ACCELERATED BENEFITS (AB)
### (continued)

**6. Can Policy Coverage Be Continued After An Accelerated Benefits Payment?** The face amount of any insurance which stays in force after a payment under the terms of this rider must equal the greater of: (a) our minimum amount limits for the plan of insurance under the policy; or (b) $25,000.

The policy to which this rider is attached will terminate after an accelerated death benefit payment is made. A new policy, with a new, reduced face amount will be issued for any remaining insurance when the percentage of the Eligible Proceeds elected is less than 100%. This new policy will be identical to the old policy. However, the new policy's face amount, the basic policy premiums, and any cash values, paid-up insurance additions or unpaid policy loan will be reduced, pro rata, based on the Percentage Elected. In addition, the amount of any insurance under a rider which is part of the Eligible Proceeds shall also be reduced based on the Percentage Elected.

All policy and rider benefits, premiums and any cash values, shall also be adjusted. This adjustment will be based on our rules in effect at that time for determining applicable benefits, premiums and values appropriate for the reduced face amount. All such adjustments will be made effective as of the date your application for benefits under this rider is received by us.

The proceeds under the new policy shall be paid, to the beneficiary, upon the death of the Insured. This payment will be made in accordance with our rules.

**7. Can Any Riders Be Continued After An Accelerated Benefits Payment?** All riders attached to the policy, except an Accidental Death Benefit rider, a Waiver of Premium Benefit rider or a decreasing term insurance rider, shall end when we make a partial payment under the terms of this rider, unless we agree otherwise. In the case of a partial payment, any Waiver of Premium Benefit rider and

the full amount of any Accidental Death Benefit rider shall continue under the new policy in accordance with its terms. In addition, no decreasing term rider can be accelerated. Instead, it shall be continued to its expiry date.

**8. Can Riders Providing Coverage On Another Insured Be Accelerated?** Any rider providing a level amount of insurance on the life of another Insured not covered under the base policy can be accelerated. This is done in the same manner as the base policy. However, the percentage of the Eligible Proceeds which is elected must be 100%, unless we agree otherwise. We must have proof that the other Insured has a life expectancy of 12 months or less.

**9. What Happens If The Insured Dies Within 60 Days After Acceleration?** If we have proof that the Insured died within 60 days after the payment of an Accelerated Benefit, we will refund the Administrative Fee and the amount of the Discount Factor adjustment deducted when benefits were accelerated. This refund will be paid to the beneficiary.

**10. Does This Rider Have Cash Or Loan Values?** This rider does not have any cash or loan value. It is not eligible for dividends.

**11. Is This Rider A Part Of The Contract?** This rider is made a part of the policy to which it is attached at issue of the policy. If added to a policy which is already in force, this rider is made a part of that policy, based on the application for this rider.

**12. What Is The Effective Date Of This Rider?** This rider and the policy to which it is attached have the same date of issue, unless the rider is added to a policy already in force. In this case, the rider's date of issue is shown in an add-on rider which we put in the policy.

**(over)**

## ACCELERATED BENEFITS (AB)
### (continued)

13. **Are Payments Under This Rider Exempt From Claims?** Payments under this rider are, to the extent applicable law permits, exempt from claims, attachments or levies of creditors or government agencies. If you are required by a government agency to use this option to apply for, obtain, or keep a government benefit or entitlement, you are not eligible for this benefit.

14. **When Does This Rider End?** Unless we agree otherwise, this rider ends when we receive an application for benefits under this rider. This rider also ends if the policy is surrendered or lapses. This rider may also end if it is continued as extended term insurance. This rider may continue if the policy is continued as reduced paid-up insurance or if the policy is reinstated. You may cancel this rider on any date, effective when we receive your signed written request.

**NYLIFE INSURANCE COMPANY OF ARIZONA**

Secretary

President

AZ94495-3

# NYLIFE INSURANCE COMPANY OF ARIZONA

## RIDER

## DISABILITY WAIVER OF PREMIUM

1. **What Is Your Benefit?**  This rider provides for the waiver of premiums for this policy in the event the Insured becomes totally disabled, as defined in this rider, while this rider is in effect.

2. **When Will Premiums Be Waived?**  We will start to waive the premiums for this policy when proof is furnished that the Insured's total disability has gone on for at least 6 months in a row. Premiums must be paid when due, until we approve a claim under this rider.

   If a total disability starts on or prior to the anniversary on which the Insured is age 60, we will waive all of the premiums which fall due during that total disability.  If it goes on until the anniversary on which the Insured is age 65, we will no longer require proof of disability. In this case, we will waive premiums due on this policy until the policy anniversary on which this policy ends in accordance with its terms.

   If a total disability starts after the anniversary on which the Insured is age 60, we will waive only those premiums which fall due during that total disability, and prior to the anniversary on which the Insured is age 65.

   Premiums are waived at the interval of payment in effect when the total disability started.  While we waive premiums, all insurance goes on as if they had been paid. We will not deduct a waived premium from the policy proceeds. If a total disability starts during a grace period, the overdue premium must be paid before we will approve any claim.

3. **How Is "Total Disability" Defined?**  "Total Disability" means that, during the first two years of disability, the Insured cannot do any of the essential acts and duties of his or her job because of disease or bodily injury. After the first two years of total disability, "Total Disability" means that the Insured, because of disease or bodily injury, cannot do any of the essential acts and duties of his or her job, or any other job for which he or she is suited based on schooling, training, or experience. If the Insured can do some but not all of these acts and duties, disability is not total and premiums will not be waived.

   If the Insured is a minor and is required by law to attend school, "Total Disability" means that because of disease or bodily injury, he or she is not able to attend school.

   "Total Disability" also means the Insured's total loss, starting while this rider is in effect, of the sight of both eyes or the use of both hands, both feet, or one hand and one foot.

4. **What Are The Total Disabilities For Which Premiums Are Not Waived?**  We will not waive premiums in connection with any of these total disabilities:
   (a) Those that start prior to the fifth birthday of the Insured, or start at a time when this rider is not in effect.
   (b) Those that are caused by an injury that is self-inflicted on purpose.
   (c) Those that are caused by any kind of war, declared or not, or by any act incident to a war or to an armed conflict involving the armed forces of one or more countries while the Insured is a member of those armed forces.

(over)

AZ98-235

# DISABILITY WAIVER OF PREMIUM
### (continued)

5.     **How Is Proof of Total Disability Established?**  Written notice and proof of this condition must be given to us, while the Insured is living and totally disabled, or as soon as it can reasonably be done.

6.     **For How Long Will Proof Be Required?**  As long as we waive premiums, we may require proof from time to time of the Insured's total disability.  After we have waived premiums for 2 years in a row, we will not need to have this proof more than once each year. As part of the proof, we may have the Insured examined, at our own expense, by a doctor we approve.

7.     **Will Premiums Be Refunded?**  If a total disability starts after a premium has been paid, and if it goes on for at least 6 months in a row, we will refund the part of that premium paid for the period after the policy month when that disability started. Any other premium paid and then waived will be refunded in full.

8.     **Does This Rider Have Cash Or Loan Values?**  This rider does not have cash or loan values.

9.     **Is This Rider Part Of The Contract?**  This rider, when paid for, is made a part of the policy, based on the application for the rider.

10.     **Will We Be Able To Contest This Rider?**  We have no right to contest this rider after it has been in force during the lifetime of the Insured for 2 years from its date of issue, unless the Insured is totally disabled at some time within 2 years of the date of issue.

11.     **What Is The Rider's Date of Issue and Amount?**  When this rider is issued at the same time as the policy, we show the rider premium amount on the Policy Data page of the policy.  The rider and the policy have the same date of issue.  When this rider is added to a policy which is already in force, we also put in an add-on rider.  The add-on rider shows the date of issue and premium amount.

12.     **When Does This Rider End?**  You can cancel this rider as of the due date of a premium.  To do this, you must send the policy and your signed notice to us within 31 days of that date. If this rider is still in effect on the anniversary on which the Insured is age 65, it will end on that date. However, if the Insured is totally disabled at that time and such disability began on or prior to age 60, this rider will continue as described in Section 2 of this rider.

    This rider ends if the policy ends.  Also, this rider will not be in effect if the policy lapses.

**NYLIFE INSURANCE COMPANY OF ARIZONA**

Secretary

President

**AZ98235-2**

# NYLIFE INSURANCE COMPANY OF ARIZONA

## RIDER

### SPOUSE'S PAID-UP INSURANCE PURCHASE OPTION (SPPO)

**1. Who Is An Insured Under This Rider?**
Any reference to an Insured under this rider includes both the Insured under the basic policy and any Other Covered Insured under any Term Insurance on Other Covered Insured rider attached to this policy.

**2. What Benefit Is Provided By This Rider?**
If this rider is in effect at an Insured's death, the person who at that time is that Insured's spouse has the right to purchase, without proof of insurability, new paid-up life insurance on his or her own life, in accordance with the provisions of this rider. That Insured's spouse must be a beneficiary to whom all or part of the life insurance proceeds resulting from that Insured's death under this policy or its riders will be payable in one sum.

**3. How Much Insurance May Be Purchased?** The amount of paid-up insurance which may be purchased is based on the life insurance proceeds which are payable in one sum (prior to the deduction of any unpaid loan) to the Insured's spouse, who is a beneficiary, upon the death of the Insured. These proceeds include the proceeds provided by the basic plan of insurance and/or by any Term Insurance on Other Covered Insured rider attached to the policy, plus any insurance (excluding accidental death benefits) from riders.

The actual amount of insurance which may be purchased must meet our minimum amount requirements, and may not exceed the least of:

(a)  the amount which can be purchased by the life insurance proceeds;

(b)  the amount of the life insurance proceeds; or

(c)  5 million dollars.

**4. What Is The Premium For The New Insurance?** The single premium rate for the new paid-up life insurance is based on the spouse's age and sex on the date the new insurance takes effect. This rate will not be more than 105% of the net single premium for paid-up life insurance, as defined in Section 8 of this rider.

**5. When Can The New Insurance Be Purchased?** The Insured's spouse can apply to purchase the new paid-up life insurance before we have paid life insurance proceeds under the policy to him or her. However, he or she must apply within the 90 days after the Insured's death.

The new paid-up life insurance will be available in a policy issued by NYLIFE Insurance Company of Arizona or by one of its affiliated or subsidiary companies. It will have the same provisions as are in the series of policies being issued by the new insuring company on its policy date.

The paid-up life insurance will take effect on the date when all three of the following events have taken place:

(a)  The spouse's signed application is received by us, while he or she is living.

(b)  We determine the life insurance proceeds of the policy payable to the spouse.

(c)  The entire single premium for the paid-up life insurance purchased under this rider has been received by us.

**(over)**

AZ94-375

## SPOUSE'S PAID-UP INSURANCE PURCHASE OPTION (SPPO)
## (continued)

We will reduce the life insurance proceeds in Item (b) to pay the single premium for the paid-up life insurance. If these proceeds are not sufficient to pay that entire single premium, then the balance of that premium must be paid to us before any such insurance will take effect.

It may happen that an Insured's spouse, who has the right to apply for paid-up life insurance under this rider, dies at the same time as that Insured, or within 90 days after that date and before that paid-up life insurance takes effect. In these cases, provided the Insured's spouse's death did not result from suicide, while sane or insane, we will pay the maximum amount of paid-up life insurance that the spouse could have applied for under this rider, less the applicable single premium for that insurance.

The beneficiary for any paid-up life insurance payable under a policy issued in connection with this rider will be the estate of that Insured's spouse, unless stated otherwise in the policy for that insurance.

6. **Are Riders Available With The New Insurance?**  Riders may not be included with the new paid-up life insurance.

7. **Is Suicide Of The Insured's Spouse Covered By This Rider?**   Suicide of the Insured's spouse, while sane or insane, within 2 years after the date of the Insured's death, is not covered by this rider. In the event of the spouse's suicide within that 2 year period, any single premium paid for any new paid-up life insurance will be refunded.

8. **Does The New Insurance Have Cash Or Loan Values?**   The new paid-up life insurance has cash value and loan value, and is eligible for dividends. However, it is not

expected that any dividends will be payable on this insurance.   The net single premiums and the cash values for the paid-up insurance are based on the 1980 CSO Tables of Mortality. Continuous functions are used.  Interest is compounded each year at 4%.

9. **Is This Rider A Part Of The Contract?**
The rider is made a part of the policy to which it is attached at issue of the policy. If added to a policy which is already in force, this rider is made a part of that policy, based on the application for the rider.

10. **Will We Be Able To Contest This Rider?**
We will not contest this rider if it is attached at issue of the policy. If this rider is added to a policy which is already in force, we will not contest the rider after it has been in force during the lifetime of the Insured for 2 years from the date of issue of the rider.

11. **What Is The Rider's Date Of Issue?**
This rider and the basic policy have the same date of issue, unless the rider is added to a policy which is already in force. In this case, the date of issue of this rider is shown in an add-on rider which is put in the basic policy by us.

12. **When Does This Rider End?** You can cancel this rider as of any date. To do this, a signed notice must be sent to us within 31 days of that date. This rider ends if the policy is surrendered, or if the policy lapses and is not continued as extended insurance or reduced paid-up insurance. However, even though this policy states otherwise, this rider will be in effect if the policy is being continued as extended insurance or reduced paid-up insurance.

**NYLIFE INSURANCE COMPANY OF ARIZONA**

Secretary

President

**AZ94375-2**

**ENDORSEMENT**

**NYLIFE Insurance Company Of Arizona**

**Term Policy To Age 90**

Renewable Each Year to Age 90 as Stated in Premiums Section.

A Stock Company Incorporated in Arizona

Term Policy Convertible for 10 Years as Stated in the Conversion Section.

Premiums Payable as Shown in Premium Schedule, with Premiums in 11th and Later Policy Years Subject to Change.

This Policy is Non-Participating.

**AZ98-70.26**

# NYLIFE INSURANCE COMPANY OF ARIZONA

## RIDER

## DISABILITY WAIVER OF PREMIUM

1. **What Is Your Benefit?**  This rider provides for the waiver of premiums for this policy in the event the Insured becomes totally disabled, as defined in this rider, while this rider is in effect.

2. **When Will Premiums Be Waived?**  We will start to waive the premiums for this policy when proof is furnished that the Insured's total disability has gone on for at least 6 months in a row. Premiums must be paid when due, until we approve a claim under this rider.

   If a total disability starts on or prior to the anniversary on which the Insured is age 60, we will waive all of the premiums which fall due during that total disability.  If it goes on until the anniversary on which the Insured is age 65, we will no longer require proof of disability. In this case, we will waive premiums due on this policy until the policy anniversary on which this policy ends in accordance with its terms.

   If a total disability starts after the anniversary on which the Insured is age 60, we will waive only those premiums which fall due during that total disability, and prior to the anniversary on which the Insured is age 65.

   Premiums are waived at the interval of payment in effect when the total disability started.  While we waive premiums, all insurance goes on as if they had been paid. We will not deduct a waived premium from the policy proceeds. If a total disability starts during a grace period, the overdue premium must be paid before we will approve any claim.

3. **How Is "Total Disability" Defined?**  "Total Disability" means that, during the first two years of disability, the Insured cannot do any of the essential acts and duties of his or her job because of disease or bodily injury. After the first two years of total disability, "Total Disability" means that the Insured, because of disease or bodily injury, cannot do any of the essential acts and duties of his or her job, or any other job for which he or she is suited based on schooling, training, or experience. If the Insured can do some but not all of these acts and duties, disability is not total and premiums will not be waived.

   If the Insured is a minor and is required by law to attend school, "Total Disability" means that because of disease or bodily injury, he or she is not able to attend school.

   "Total Disability" also means the Insured's total loss, starting while this rider is in effect, of the sight of both eyes or the use of both hands, both feet, or one hand and one foot.

4. **What Are The Total Disabilities For Which Premiums Are Not Waived?**  We will not waive premiums in connection with any of these total disabilities:
   (a) Those that start prior to the fifth birthday of the Insured, or start at a time when this rider is not in effect.
   (b) Those that are caused by an injury that is self-inflicted on purpose.
   (c) Those that are caused by any kind of war, declared or not, or by any act incident to a war or to an armed conflict involving the armed forces of one or more countries while the Insured is a member of those armed forces.

(over)

**AZ98-235**

RC325786

**LIFE INSURANCE APPLICATION (PART I) TO:**
☐ NEW YORK LIFE INSURANCE COMPANY (NYLIC)  51 Madison Ave., New York, NY 10010
☐ NEW YORK LIFE INSURANCE AND ANNUITY CORPORATION (NYLIAC) (A Delaware Corp.) 51 Madison Ave., NY, NY 10010
☒ NYLIFE INSURANCE COMPANY OF ARIZONA (Not Licensed in Every State) 2398 E. Camelback Rd. Suite 500, Phoenix, AZ 85016

76 057 624

☒ New Application  ☐ Amend Application Dated / /  ☐ Reinstatement  ☐ Change Request    Pol. No _____    { ☐ Conversion ☐ Att age ☐ Orig age    ☐ GIO/PPO/GIR/SPO

## 1. PERSON PROPOSED FOR COVERAGE

☐ Primary Insured is also an OCI under OCI or 5YT Rider(s)

Sex ☐ M ☒ F   Title ☐ Mr ☒ Mrs ☐ Ms ☐

First/Mid Name: MARGARET M

LAST NAME & Suffix: CLEVENGER

☐ Maiden
☐ Known as

Born MO/Y: Redacted
Birthplace State, City: MI

Soc Sec: Redacted     Tax ID#: _ —

Driver's License No.: Redacted     State of Issue: MI

Mailing Address: 3 OLD FORGE CT

City: LITTLE ROCK

State: AR   Zip 72227 +   Time Yrs/Mos /

Prev St (if within 2 yrs)
City:
State:   Zip +   Time Yrs/Mos /

**Present Occupation and Duties:** OCCUPATIONAL THERAPIST / OCCUPATIONAL THERAPIST

**Employer Mailing Address:** LITTLE ROCK SCHOOL DIST / 810 W. MARKHAM

City: LITTLE ROCK

State: AR   Zip 72202 +   Time Yrs/Mos 2 /

Prev Occupation(s) and Duties (within 2 yrs):

Previous Employer Mailing Address:

City:
State:   Zip +   Time Yrs/Mos /

Mail Address ☒ Res ☐ Bus   Telephone (Home) 501-225-0858
Best Place to Call ☒ Res ☐ Bus   Telephone (Business) 501-918-8360

Best time to call between (circle AM or PM) From 9 : 00 AM/PM to 4 : 00 AM/PM

## 2. NYLIC

| RIDERS | DIVIDEND OPTION |
|---|---|

| | | | | | |
|---|---|---|---|---|---|
| ☐WL ☐MPWL | ☐ WP | ☐ OPP ☐ COM Scheduled Bill | ☐ PPO $ | ☐ 5YTR PI ☐ MPG ☐ | ☐ 1YT (Select another option for balance of dividends) |
| Face Amount $ | ☐ ADB | $ | $ | $ | ☐ Pd Up Ad |
| Premium $ | | Unscheduled (Lump Sum) | ☐ IPTR | ☐ DOT | ☐ Accum |
| APL ☐Yes | ☐ LBR | $ | $ | | ☐ Prem |
| | | | ☐ UR (See Q.18(a)) | | ☐ Cash |

| | | | | | |
|---|---|---|---|---|---|
| ☐Spectra 1 (Includes 5YTR) ☐Spectra 2 (Includes 5YTR) ☐Spectra 3 (includes DOT& OPP riders) | Check any additional riders not automatically included in selected Spectra Life plan. | | | | ☐ 1YT (Select another option for balance of dividends) |
| | ☐ WP | ☐ OPP ☐ COM Scheduled Bill | ☐ PPO $ | ☐ 5YTR PI ☐ MPG ☐ | ☐ Pd Up Ad |
| ☐ | ☐ ADB | $ | ☐ IPTR | ☐ DOT | ☐ Accum |
| Face Amount $ | ☐ LBR | Unscheduled (Lump Sum) | $ | | ☐ Prem |
| APL ☐Yes | | $ | ☐ UR (See Q.18(a)) | | ☐ Cash |

| | | | | | |
|---|---|---|---|---|---|
| ☐5YT | ☐ WP | ☐ 5YTR PI ☐ MPG | ☐ ADB | ☐ | (Select one) |
| Face Amount $ | ☐ LBR | $ | $ | | ☐ Accum |
| | ☐ MPG | | | | ☐ Prem |
| | | | | | ☐ Cash |

| | | | | | |
|---|---|---|---|---|---|
| ☐IPT | ☐ WP | ☐ ADB | ☐ PPO | ☐ | (Select one) |
| Face Amount $ | ☐ LBR | $ | $ | | ☐ Accum |
| Premium $ | | | | | ☐ Prem |
| | | | | | ☐ Cash |

| | |
|---|---|
| ☐ | ☐ |
| $ | |

**RC325786**

| NYLAZ | | RIDERS |
|---|---|---|

☒ Term to Age 90
☒ WP   ☐ ADB   ☐
Face Amount $ *250000*   ☒ LBR   $

☐
$   ☐

---

| NYLIAC | RIDERS |
|---|---|

☐NYLIAC Accumulator  ☐NYLIAC Protector
☐ULGUIDE ☐ULCVAT  ☐ULGUIDE ☐ULCVAT
OPTION {☐ 1 / ☐ 2    Face Amount
Planned $    $
Initial $

☐ MDW   ☐ ADB   ☐ GIR   ☐ STR   ☐
$    $    $

☐VUL   Face Amount $
OPTION {☐ 1 / ☐ 2
Sched. $
Initial $

☐ MDW   ☐ ADB   ☐ OCI PI   ☐
☐ LBR    $    $
☐ GIR         ☐ GMDB
$            to Age☐ 70
             to Age☐ 80
             to Age☐ 95

☐Spectra VUL 70 ☐Spectra VUL 80
☐Spectra VUL 95
OPTION {☐ 1 / ☐ 2
Face Amount $
Sched. $
Initial $

☐ MDW   ☐ ADB   ☐ OCI PI   ☐
☐ GIR    $    $
$            ☐ LBR

☐Asset Preserver (UL/LTC)
Face Amount $
Premium $
Option:  ☐ LTC 24
         ☐ LTC 36+
         ☐ LTC 48+

Submit completed Asset Preserver Application Supplement

☐SPL
Face Amount $
Premium $

☐ LBR   ☐

☐
$

☐

---

**INSURANCE IN FORCE OR PENDING**

| | Yes | No | |
|---|---|---|---|
| Do you have other Life Insurance (all Companies) in force? | ☒ | ☐ | If "Yes", Total Amount in all Companies $ *300000* |
| Do you have other Life Ins. (all Cos.) pending or issued in last year? | ☐ | ☒ | If "Yes", Company |

Amount $    Plan    No.

---

**3. ENDORSEMENTS AND OTHER REQUESTS**

U.S. Tax Qualified:   ☐ TSA   ☐ Pens. Trust   ☐ Keogh   ☐ 403(B) ☐
                      ☐ 401(A) ☐ 401(K)   ☐ 457
Split Dollar:   ☐ Basic   ☐ Estate   ☐ Contributory   ☐ Non-Contributory
Pension Option   ☐ Yes   "Non-Trsf." Option   ☐ Yes   Reduced Pd. Up at lapse   ☐ Yes

Preliminary Term to M/D/Y   [  /  /  ]   *(available on WL, MPWL only)*  Note: Policy Date question is not applicable if prelim. term

**RC325786**

**4. MODE** ☐ Ann ☐ Semi ☐ Qrtly ☑ COM ☐ Nyla ☐ Gvt ☐ Arr. for U.S. Tax Qual. Plan ☐ _____ (All modes not available on all plans)

**5. POLICY DATE** If no "other date" is shown, policy date is:
(a) later date of Part I and any required Part II, if cash paid with Part I; or
(b) the policy's date of issue, if cash not paid; or
(c) the option date, if insurability option being exercised; or
(d) OTHER DATE M/D/Y ☐ ☐ / ☐ ☐ / ☐ ☐ ☐ ☐

**6. REPLACEMENT**

|  | Yes | No |
|---|---|---|
| (a) Does the life insurance for which you are applying replace, in whole or in part, any existing life insurance or annuity contract(s)? | ☒ | ☐ |
| (b) Do you intend, now or in the future, to take a loan against the cash value of any policy presently in force, because of the new policy for which you are applying? | ☐ | ☒ |
| (c) Is the policy for which you are applying the result of a 1035 Exchange? | ☐ | ☒ |

If "Yes" to any of the above, Name of Insured _MARGARET M CLEVENGER_ ~~JACKSON NATIONAL LIFE~~ · Company _JACKSON NATIONAL_

Pol. No. _0015817280_ · Type of Plan _TEN YEAR L-TERM_ Amount $ _250,000_

If more than one policy being replaced, use "Details, Q.18".

**7. BENEFICIARY (Subject to change)** Complete section A or B. Must complete section B for Non-Standard Beneficiary.

A. Standard Beneficiary Designations (select one)

☐ Spouse

☒ 1st, Spouse _TIMOTHY B CLEVENGER_
   2nd, Children of marriage

☐ 1st, Spouse
   2nd, Children of marriage and named children

☐ Estate

☐ 1st, Spouse
   2nd, Children of marriage and legally adopted

☐ 1st, Spouse
   2nd, Named children

☐ Trust
   Name of Trustee ____ Name of Trust ____ Date of Trust ____

☐ Uniform Transfers to Minors
   ____ as custodian for ____ under the ____ Uniform Transfers/Gifts Minors Act (UTMA)
   (Minor)      (State)

B. ☐ Named Beneficiaries (indicate Order as 1st, 2nd, etc.)

| Order | Full Name | Relationship |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**8. CURRENT HEALTH**

|  | Yes | No |
|---|---|---|
| (a) In the last 2 years: have you been unable to work or unable to attend school or been disabled for one month or more? | ☐ | ☒ |
| (b) In the last 2 years, have you been in a hospital or other medical facility for more than 5 consecutive days? | ☐ | ☒ |

Note: If "Yes" to either part of question 8, cash CANNOT be paid and an Application Part II must be completed in all cases.

9. (a) Answer if cash is intended to be paid with this application. Is it agreed that cash will be received subject to the terms of the attached receipt, that any coverage will be provided only as stated in the attached receipt and only if all conditions to coverage are met, and that any such coverage will be temporary and limited in amount?

|  | Yes | No |
|---|---|---|
|  | ☐ | ☐ |

If "No" to 9(a), or if Questions 8(a) or 8(b) are answered "Yes", cash cannot be paid.
(b) TOTAL CASH PAID? $ _NONE_    If amendment, cash previously paid: $ ____

10. Is a spouse or dependent child applying for SCI/CI Ins. coverage? (If yes, this form must not be used; use Multilife application form) Yes ☐ No ☐

**11. INSURANCE ON CHILD** Answer if Proposed Insured is under 14 yrs. 6 mos. (Explain any "No" in Details, Q. 18.)

|  | Yes | No |
|---|---|---|
| (a) Is Applicant a parent or legal guardian (attach proof of guardianship) of Proposed Insured? | ☐ | ☐ |
| (b) Is Applicant employed and providing Proposed Insured's main support? | ☐ | ☐ |
| (c) Is all life insurance in force on Applicant at least equal to that on Proposed Insured? | ☐ | ☐ |
| If Child resides in NY and age is over 4 yrs 6 mos is amount in force on applicant at least equal to 2 times amount on Child? | ☐ | ☐ |
| If Child resides in NY and age is under 4 yrs 6 mos is amount in force on applicant at least equal to 4 times amount on Child? | ☐ | ☐ |
| (d) Are all other children in family insured or to be insured for an amount at least equal to that on Proposed Insured? | ☐ | ☐ |

RC325786

## 12. TOBACCO/NICOTINE

If age 18 or over on Policy Date, have you used tobacco or nicotine in any form in the last 5 years?...............................................Yes  No ☐ ☒

If "Yes", indicate type used _____  date of last use (Mo/Yr) ___/___   ☐ ☒

## 13. UNDERWRITING DATA

(a) In last 2 years, have you engaged in or do you now intend to engage in?  If "Yes", submit Form 7663

| | | | | | |
|---|---|---|---|---|---|
| aircraft flying other than as a passenger | ☐ Yes ☐ No | scuba diving | ☐ Yes ☐ No | ultralight flying | ☐ Yes ☐ No |
| motorcycle driving | ☐ Yes ☐ No | ballooning | ☐ Yes ☐ No | mountaineering | ☐ Yes ☐ No |
| snowmobile driving | ☐ Yes ☐ No | parachuting | ☐ Yes ☐ No | rodeo riding | ☐ Yes ☐ No |
| motorized racing | ☐ Yes ☐ No | hang gliding | ☐ Yes ☐ No | | |

Each part of this ques. is answered: ☒ No

|  | Yes | No |
|---|---|---|
| (b) Do you have a current driver's license? | ☒ | ☐ |
| (c) In the last 5 years, have you had your driver's license suspended or revoked?  If yes, give details, dates, driver's license # and state of license in Details, Q. 18. | ☐ | ☒ |
| (d) In last 5 years, have you been arrested, convicted or imprisoned for any reason?  If yes, give details in Q. 18. | ☐ | ☒ |
| (e) Are you a citizen of the United States?  If no, give country of citizenship in Q. 18. | ☒ | ☐ |
| (f) In last 2 years, have you traveled or resided outside the U.S. or Canada or do you intend to do so within the next 12 months? If yes, give Where, When, How long in Details, Q. 18. | ☐ | ☒ |
| (g) In the last 2 years, have you been declined for issue, reinstatement or renewal of any type of Life or Health Insurance?  If yes, give Company name and reason in Details, Q. 18. | ☐ | ☒ |

Details are required for all "Yes" answers to Question 14-17. Do not answer Question 14-17 if a Part II is required.

## 14. MEDICAL UNDERWRITING

(a) In last 10 years have you had or been treated for:

| | | | | | |
|---|---|---|---|---|---|
| heart disorder | ☐ Yes ☐ No | irregular pulse | ☐ Yes ☐ No | cancer | ☐ Yes ☐ No |
| angina | ☐ Yes ☐ No | hypertension | ☐ Yes ☐ No | tumor | ☐ Yes ☐ No |
| stroke | ☐ Yes ☐ No | diabetes | ☐ Yes ☐ No | | |

Each part of this Q. is answered    ☐ No

(b) In last 10 years have you been counseled, treated, or hospitalized for:

| | | | | | |
|---|---|---|---|---|---|
| psychiatric condition | ☐ Yes ☐ No | emotional condition | ☐ Yes ☐ No | mental health condition | ☐ Yes ☐ No |

Each part of this Q. is answered: ☐ No

(c) In last 10 years have you used cocaine or other controlled substance  ☐ Yes ☐ No

or have you been counseled, treated or hospitalized for drug use  ☐ Yes ☐ No

Each part of this Q. is answered: ☐ No

(d) In last 10 years have you been absent from work because of alcohol use or have you been counseled, treated or hospitalized for alcohol use  ☐ Yes ☐ No

Each part of this Q. is answered: ☐ No

## 15. In last 2 years have you had or been treated for:

(a)

| | | | | | |
|---|---|---|---|---|---|
| unexplained weight loss | ☐ Yes ☐ No | recurring fever | ☐ Yes ☐ No | pneumonia | ☐ Yes ☐ No |
| swollen glands | ☐ Yes ☐ No | recurring infection | ☐ Yes ☐ No | thrush | ☐ Yes ☐ No |
| recurring diarrhea | ☐ Yes ☐ No | persistent cough | ☐ Yes ☐ No | | |

Each part of this Q. is answered:    ☐ No

(b)

| | | | | | |
|---|---|---|---|---|---|
| edema | ☐ Yes ☐ No | muscle weakness | ☐ Yes ☐ No | shortness of breath | ☐ Yes ☐ No |
| transient visual loss | ☐ Yes ☐ No | back or spine disorder | ☐ Yes ☐ No | internal bleeding | ☐ Yes ☐ No |

Each part of this Q. is answered:    ☐ No

## 16. In last 5 years have you had or been treated for:

(a)

| | | | | | |
|---|---|---|---|---|---|
| chronic respiratory disorder | ☐ Yes ☐ No | blood disorder | ☐ Yes ☐ No | seizures | ☐ Yes ☐ No |
| kidney disorder | ☐ Yes ☐ No | circulatory disorder | ☐ Yes ☐ No | other nervous system disorder | ☐ Yes ☐ No |
| intestinal disorder | ☐ Yes ☐ No | | | | |

Each part of this ques. is answered:    ☐ No

(b)

| | | | |
|---|---|---|---|
| liver disorder | ☐ Yes ☐ No | immune system disorder  (including AIDS or AIDS-Related Complex) | ☐ Yes ☐ No |
| pancreas disorder | ☐ Yes ☐ No | | |

Each part of this ques. is answered:    ☐ No

## 17. Your height (ft., in.) _____        Your weight (lbs.) _____

● RC325786

**18.** Details: Give nature and severity, dates and duration, treatment, including prescription medication, and results for each "Yes" answer to questions 14, 15 and 16. Also use this space for any other additional details and special requests. (Indicate Ques. No. if applicable)

057   624

| Q.# | Details | Name, Addr of Dr./Hosp. |
|---|---|---|
| | *REQUESTING PREFERRED RATING* | |
| | *COMPETITION WITH JANKSON NATIONAL* | |

**18(a)**
2 Answer for UR rider only:
Have you been continuously employed for the past two years?  ☐ Yes  ☐ No
Have you received unemployment benefits in the last two years?  ☐ Yes  ☐ No

**19. APPLICANT (If not Proposed Insured)**

First/Mid Name
LAST NAME & Suffix
Born M/D/Y
Soc Sec             Tax ID#
Relationship to Proposed Insured
☐ Spouse  ☐ Parent  ☐ Employer  ☐ UTMA  ☐
Address  ☐ Same as PI Res  ☐ Same as PI Bus  ☐ other as follows

Street
City
State   Zip        +
Employer
Business Street
City
State   Zip        +   Mail Address ☐ Res ☐ Bus

**20. OWNER (If not Proposed Insured)**

First/Mid Name
LAST NAME & Suffix
Born M/D/Y
Soc Sec             Tax ID#
Relationship to Proposed Insured
☐ Spouse  ☐ Parent  ☐ Employer  ☐ UTMA  ☐
Are you a citizen of the United States? ☐ Yes ☐ No
If no, give country of citizenship
Mailing Address  ☐ Same as PI's  ☐ Same as Applic's  ☐ other as follows

Street
City
State   Zip        +
If Corp., Where Inc.   Date Inc. MO DAY YR
Successor Owner  Relationship
☐ PI ☐ as below  to Prop Insd
Name

☐ Check if multiple owners. Give additional name, birthdate, SS#, relationship in Details, Question 18. Unless otherwise specified in Question 18, if more than one owner is shown, ownership will be joint with right of survivorship.

**21. AMENDING APPLICATION PREVIOUSLY SUBMITTED.**

| Since the date the application for the policy (including any Part II) has been completed, have you: | Yes | No |
|---|---|---|
| (a) been admitted to a hospital, sanitarium, or other medical facility? If "Yes" to (a), submit a new application Part II. | ☐ | ☐ |
| (b) had any illness, or consulted any physician or practitioner for any reason? If "Yes" to (b), give full details in Q. 18. | ☐ | ☐ |

RC325786

---

**22. EXERCISING A GUARANTEED INSURABILITY OPTION.**

(a) Option Date _____    (b) ☐ Scheduled Option Date  ☐ Alternate Option Date

(c) If Alternate Option Date ☐ date of marriage ☐ birth ☐ adoption   Mo. ___ Day ___ Year ___   Submit proof of event

---

**23. EXERCISING CONVERSION PRIVILEGE FROM TERM COVERAGE TO PERMANENT INSURANCE**

The Insurer is requested to issue the policy applied for on the Age Basis selected and continue the following Rider(s) to the Policy(ies) listed on Page 1 of this application, as indicated below, when the policy applied for takes effect.

| Age Basis | Convert All: | Convert Partial: |
|---|---|---|
| ☐ Attained Age | ☐ term policy | ☐ Term policy (with pro rata reduction of any ADB) |
| ☐ Original Age | ☐ term rider | $_____    amount remaining as term policy |
| | ☐ 1 YT Div Opt | ☐ Term rider |
| | ☐ OCI/5YTR | $_____    amount remaining as term rider |

Does the coverage to be converted include Waiver of Premium Benefit?   ☐ Yes ☐ No

If "Yes", does the insured have any disability which prevents him or her from being actively at work?   ☐ Yes ☐ No

If "Yes", give dates and details in Q. 18

Is Additional coverage being applied for?  ☐ Yes ☐ No   If "Yes", refer to General Requirements for Various Types of Requested Actions

---

THOSE PERSONS WHO SIGN BELOW AGREE THAT:

1. All of the statements which are part of the application are correctly recorded, and are complete and true to the best of the knowledge and belief of those persons who made them. Answers that are not true and complete may, subject to the policy's Incontestability Provision, invalidate coverage.

2. No agent or medical examiner has any right to accept risks, make or change contracts, or give up any of NYLIC's, NYLIAC's, or NYLAZ's rights or requirements.

3. "Cash Paid" with the application, with respect to a new policy or additional benefit, provides a limited amount of temporary coverage for up to 90 days, if the terms and conditions of the receipt are met. Temporary coverage is not provided if a policy or benefit is applied for under the terms of a conversion privilege or a guaranteed insurability option, or if reinstatement is applied for.

4. To put a policy or benefit issued in response to this application in force, the policy or written evidence of the benefit must be delivered to the Applicant and the full first premium paid while the person to be covered is living. If temporary coverage, with respect to a policy or benefit, is not in effect at time of delivery, there must not have been any material change in the insurability of that person, as described by the statements in the application; this means that these statements must still be complete and true as if made at the time of delivery.

   However, if the policy or benefit is being applied for under the terms of a conversion privilege or guaranteed insurability option, and NYLIC's, NYLIAC's, or NYLAZ's approval is not required to put it in force, the policy or benefit will take effect as soon as the requirements of that privilege or option have been met.

5. Under penalties of perjury, I (as the owner named in Question 1 or 20) certify that: (1) the Social Security or Employer ID Number shown in this application is my correct taxpayer identification number, or I am awaiting a number to be issued to me (write "awaiting TIN" in Question 20) AND (2) I am not subject to backup withholding because: (a) I am exempt from backup withholding; or (b) I have not been notified by the IRS that I am subject to backup withholding as a result of a failure to report all interest or dividends; or (c) the IRS has notified me that I am no longer subject to backup withholding. (Cross out Item 2 if the IRS notified you that you are subject to backup withholding.)

**THE INTERNAL REVENUE SERVICE DOES NOT REQUIRE YOUR CONSENT TO ANY PROVISION OF THIS DOCUMENT OTHER THAN THE CERTIFICATIONS REQUIRED TO AVOID BACKUP WITHHOLDING**

---

Dated at *Little Rock Ar*    on Mo /Day/Yr  7 / 12 / 00

I certify I have truly and accurately recorded all answers given to me.

*Margaret Clue*
Signature of Applicant

Witness *H E Moore*
Agent

Signature of Owner if other than Applicant

Countersigned by Lic. resident agt. (if reqd.)

Signature of Parent if Proposed Insured is under 14 yrs. 6 mos. and Parent has not signed as Applicant

Signature of Proposed Insured, if other than Applicant

2000 JUL 28 A 8:38

Countersign Code#  Surname

Print Agent's Name

Title if signed on behalf of corporation, trust, etc.

The signatures above apply to the application and the certification of Taxpayer Identification Number

"Any person who knowingly and with intent to defraud any insurance company or other persons, submits an application containing any materially false information, or conceals any fact, material thereto, commits a fraudulent insurance act, which is a crime, subject to criminal prosecution and civil penalties."

998-501.10

# STATE OF ARKANSAS

**ARKANSAS DEPARTMENT OF HEALTH**
Vital Records
**CERTIFICATE OF DEATH**

FILE NUMBER 2018021027

| 1. DECEDENT'S LEGAL NAME (Include AKA's if any) (First, Middle, Last, Suffix) | | 2. SEX | 3a. DATE OF DEATH | 3b. TIME OF DEATH |
|---|---|---|---|---|
| MARGARET MARY CLEVENGER | | FEMALE | SEP. 3, 2018 | 06:50 AM |

| 4. SOCIAL SECURITY NO. | 5a. AGE-Last Birthday | 5b. UNDER 1 YEAR | | 5c. UNDER 1 DAY | | 6. DATE OF BIRTH | 7. BIRTHPLACE (City and State or Foreign Country) |
|---|---|---|---|---|---|---|---|
| Redacted | Reda | Months | Days | Hours | Minutes | Redacted | DETROIT, MI |

| 8a. RESIDENCE STATE or FOREIGN COUNTRY | 8b. COUNTY | 8c. CITY OR TOWN | | |
|---|---|---|---|---|
| ARKANSAS | PULASKI | LITTLE ROCK | | |

| 8d. NUMBER AND STREET | 8e. APT. NO. | 8f. ZIP CODE | 8g. INSIDE CITY LIMITS? |
|---|---|---|---|
| 3 OLD FORGE CT | | 72227-3844 | YES |

| 9. EVER IN US ARMED FORCES? | 10. MARITAL STATUS AT TIME OF DEATH | 11. SURVIVING SPOUSE'S NAME (If wife, give name prior to first marriage.) |
|---|---|---|
| NO | MARRIED | TIMOTHY BENJAMIN CLEVENGER |

| 12a. IF DEATH OCCURRED IN A HOSPITAL | 12b. IF DEATH OCCURRED SOMEWHERE OTHER THAN A HOSPITAL | 12c. COUNTY OF DEATH |
|---|---|---|
| EMERGENCY ROOM / OUTPATIENT | | PULASKI |

| 12d. FACILITY NAME (If not institution, give number & street) | 12e. CITY OR TOWN | 12f. ZIP CODE |
|---|---|---|
| BAPTIST HEALTH MEDICAL CENTER - LR | LITTLE ROCK | 72205-7299 |

| 13. FATHER'S NAME (First, Middle, Last) | 14. MOTHER'S NAME PRIOR TO FIRST MARRIAGE (First, Middle, Last) |
|---|---|
| EARLE KAVANAUGH | HELEN HOGAN |

| 15a. INFORMANT'S NAME | 15b. RELATIONSHIP TO DECEDENT | 15c. MAILING ADDRESS (Number and Street or PO Box, City, State, Zip Code) |
|---|---|---|
| TIMOTHY BENJAMIN CLEVENGER | HUSBAND | 3 OLD FORGE CT, LITTLE ROCK, AR, 72227-3844 |

| 16a. METHOD OF DISPOSITION | 16b. PLACE OF DISPOSITION (Name of cemetery, crematory, other place) | 16c. LOCATION - CITY, TOWN, AND STATE |
|---|---|---|
| CREMATION | BISHOP-CRITES CREMATORY | GREENBRIER, ARKANSAS |

| 17a. EMBALMER'S NAME | 17b. EMBALMER'S LICENSE # | 17c. SIGNATURE (FUNERAL SERVICE LICENSE OR OTHER AGENT) |
|---|---|---|
| JOSH S TAYLOR | 2430 | /s/ JOSH S TAYLOR |

| 17d. NAME AND COMPLETE ADDRESS OF FUNERAL FACILITY | 17e. LICENSE # |
|---|---|
| RUEBEL FUNERAL HOME 6313 W. MARKHAM, LITTLE ROCK, AR, 72205 | 063 |

| 18a. DATE PRONOUNCED DEAD | 18b. TIME PRONOUNCED DEAD | 18c. NAME AND TITLE OF PERSON PRONOUNCING DEATH (PRINT / TYPE) | 19. WAS MEDICAL EXAMINER OR CORONER CONTACTED? |
|---|---|---|---|
| SEP. 3, 2018 | 08:50 AM | WENDELL PAHLS, MD | YES |

**CAUSE OF DEATH**

20. PART I. Enter the chain of events—diseases, injuries, or complications—that directly caused the death. DO NOT enter terminal events such as cardiac arrest, respiratory arrest, or ventricular fibrillation without showing the etiology. DO NOT ABBREVIATE. Enter only one cause on a line.

| | | APPROXIMATE INTERVAL: Onset to Death |
|---|---|---|
| IMMEDIATE CAUSE (Final disease or condition resulting in death) | a. MULTIPLE BLUNT FORCE INJURIES | |
| | _Due to (or as a consequence of)_ | UNKNOWN |
| Sequentially list conditions, if any, leading to the cause listed on line a. Enter the UNDERLYING CAUSE (disease or injury that initiated the events resulting in death) LAST. | b. | |
| | _Due to (or as a consequence of)_ | |
| | c. | |
| | _Due to (or as a consequence of)_ | |
| | d. | |

| PART II. Enter other significant conditions contributing to death but not resulting in the underlying cause given in PART I. | 21a. WAS AN AUTOPSY PERFORMED? |
|---|---|
| | YES |
| | 21b. WERE AUTOPSY FINDINGS AVAILABLE TO COMPLETE THE CAUSE OF DEATH?   YES |

| 22. MANNER OF DEATH | 23. DID TOBACCO USE CONTRIBUTE TO DEATH? | 24. IF FEMALE: |
|---|---|---|
| HOMICIDE | UNKNOWN | UNKNOWN IF PREGNANT WITHIN THE LAST YEAR |

| 25a. DATE OF INJURY (Mo/Day/Yr) | 25b. TIME OF INJURY | 25c. PLACE OF INJURY (e.g. Decedent's home, construction site, restaurant, wooded area) | 25d. INJURY AT WORK? |
|---|---|---|---|
| UNKNOWN | UNKNOWN | RESIDENCE | NO |

| 25e. LOCATION OF INJURY (Number, Street, Apartment No., City, State, Zip Code) | |
|---|---|
| 3 OLD FORGE CT LITTLE ROCK, AR 72227-3844 | |

| 25f. DESCRIBE HOW INJURY OCCURRED: | 25g. IF TRANSPORTATION INJURY, SPECIFY |
|---|---|
| SUBJECT ASSAULTED | |

26a. CERTIFIER (Check only one):
☒ Medical Examiner * On the basis of examination, and/or investigation, in my opinion, death occurred at the time, date, and place, and due to the cause(s) and manner stated.

| SIGNATURE: | /s/ FRANK J PERETTI, MD | TITLE: | MEDICAL EXAMINER | DATE: | SEPTEMBER 05, 2018 |
|---|---|---|---|---|---|

| 26b. NAME AND COMPLETE MAILING ADDRESS OF PERSON SIGNING ITEM 26a. (Type / Print) | 26c. LICENSE # |
|---|---|
| FRANK J PERETTI, MD, MEDICAL EXAMINER 3 NATURAL RESOURCES DR, LITTLE ROCK, 72205 | R-4341 |

| 27a. SIGNATURE OF REGISTRAR | 27b. FOR REGISTRAR ONLY - DATE FILED |
|---|---|
| _Shirley Louie_ | SEP. 10, 2018 |

DENOTES AMENDED ITEMS

THIS IS TO CERTIFY THAT THE ABOVE IS A TRUE AND CORRECT COPY OF THE CERTIFICATE ON FILE IN THE ARKANSAS DEPARTMENT OF HEALTH.

**SEAL** — ARKANSAS DEPARTMENT OF HEALTH — LITTLE ROCK, ARK.

SEP 11 2018

_Shirley Louie_
Shirley Louie
State Registrar

6223850
6223850

**WARNING:** A REPRODUCTION OF THIS DOCUMENT RENDERS IT VOID AND INVALID. DO NOT ACCEPT UNLESS EMBOSSED SEAL OF THE ARKANSAS DEPARTMENT OF HEALTH IS PRESENT. IT IS ILLEGAL TO ALTER OR COUNTERFEIT THIS DOCUMENT.

VR-112

THE FACE OF THIS DOCUMENT HAS A COLORED BACKGROUND ON WHITE PAPER. THIS IS WATERMARKED PAPER. DO NOT ACCEPT WITHOUT FIRST HOLDING TO LIGHT TO VERIFY WATERMARK.

**New York Life Insurance Company**
# Death Benefit Proceeds Form *Please print clearly*

Questions? Call (800) 695-9873
8 am – 7 pm ET

### 1. List below the policy number(s) under which you are making a claim

| 7 | 6 | 0 | 5 | 7 | 6 | 2 | 4 | | | | | | | | | | | | | |

### 2. Deceased Insured / Annuitant Information

Name of Deceased
FIRST *Margaret*   MIDDLE *M*   LAST *Clevenger*

Nickname or Maiden Name

Date of Birth   Redacted   MM DD YYYY

Date of Death   *09*   *03*   *2018*   MM   DD   YYYY

Deceased's Country of Birth   *US*

Was Deceased totally disabled at least 6 months prior to death?   ☐ Yes  ☑ No
If yes, date of onset of disability _____

Cause/ Manner of Death

Natural (check one)
☐ Cancer   ☐ Heart Disease
☐ Respiratory Disease
☐ Other _____

If not Natural (check one)
☐ Accident   ☐ Suicide
☑ Homicide   ☐ Unknown
☐ Other _____

Deceased's Social Security Number   Redacted

State/Country of Residence at Time of Death   *AR / US*

### 3. Beneficiary Information

Capacity under which you are making this claim   CHECK ONE. REFER TO PAGE 4 FOR DESCRIPTIONS.

☑ Individual Beneficiary   ☐ Custodian/Guardian/Conservator/ Power of Attorney   ☐ Corporate Officer   ☐ Estate Executor   ☐ Trustee See page 11   ☐ Collateral Assignee

Name (Individual, Minor, Corporation, Estate or Trust)   *Timothy B. Clevenger*

☑ Male
☐ Female
(if applicable)

Relationship to Insured   ☑ Spouse   ☐ Child   ☐ Grandchild   ☐ Parent   ☐ Sibling   ☐ Other _____

Date of Birth   Redacted   MM DD YYYY

Daytime Phone   *501-412-0376*

Email   *timothybclevenger@gmail.com*

Residential Address   *#3 Old Forge Ct.*   STREET   APT.   CITY *Little Rock*   STATE *AR*   ZIP *72227*

Mailing Address (if different)   STREET   APT.   CITY   STATE   ZIP

**Income Tax Certification**

Enter your **Social Security** number if you are an individual beneficiary   Redacted

OR

Enter **Taxpayer Identification** number if claiming benefits as an estate, trust, or corporation

### 4. Children Certification

Complete this section if you have been informed that the beneficiary designation is listed as Children of the Insured or Children Born of Marriage, or if there are children under the age of 25 insured under a Children's Insurance Rider. Please list all children below. Attach an additional page if needed.

| Name | Date of Birth | Parent 1 |
|---|---|---|
| Address | Date of Death (if applicable) | Parent 2 |

| Name | Date of Birth | Parent 1 |
|---|---|---|
| Address | Date of Death (if applicable) | Parent 2 |

**See next page for Payment of Death Benefit Proceeds Options and your Required Signature ▶**

## New York Life Insurance Company  Death Benefit Proceeds Form

### 5. Payment Options for Death Benefit Proceeds Please select one of the following options.

*If no selection is made, proceeds will be sent in a Lump Sum Check (if applicable).*

**Ⓐ** ☒ **Lump Sum Check**

**Ⓑ** ☐ **Settlement Alternatives** (Please check one.) ☐ Proceeds Left on Deposit ☐ Elected Income ☐ Guaranteed Life Income

☐ **Inherited IRA** (If selected, this must be done as a trustee-to-trustee transfer to the new custodian/institution with their paperwork)

☐ **Other** _____

The original life insurance contract may have specified that certain settlement alternatives are available for distributing the proceeds to the beneficiaries. Please refer to the original policy for a description of any alternatives. If the policy makes no mention of these, the death benefit proceeds will be distributed in a lump sum check.

**FOR ANNUITIES ONLY**

**Ⓒ** ☐ **Surviving Spouse Option** This option is available if you are a surviving spouse and the sole primary beneficiary of an individual tax-deferred plan (not available on Tax Sheltered Annuities, Keogh Plans, or Pension Plans). If selected, please proceed to Section 7.

By not selecting this option, I acknowledge that I do not wish to take advantage of the special spousal tax-deferral option. I recognize that income taxes may be payable, and taxes may be withheld on some or all of the funds I receive.

**Ⓓ** ☐ **Continue Payments** (if applicable for Immediate Annuities and if available in the contract)

**FOR LIFE INSURANCE ONLY**

**Ⓔ** ☐ **Spouse's Paid-Up Insurance Option (SPPO)** If the primary beneficiary is the insured's spouse or an eligible third party (such as a trust or an individual who is both the policyowner and the beneficiary), the primary beneficiary may be able to purchase a fully paid-up life insurance policy on the life of the spouse without underwriting or any medical questions, regardless of health. This option may also be available if the insured's spouse dies at the same time as the insured or within certain time limits, resulting in additional life insurance benefits. This is subject to the time limits set forth in the insurance policy.
*The New York version of the SPPO Rider is called the Rider Insured's Paid Up Insurance option (RPPO/RIPPO).

**FOR ANNUITIES ONLY** | **6. Tax Withholding Section**

If your Social Security number (if you are an individual beneficiary) or Taxpayer Identification number (if claiming benefits as an estate, trust, or corporation) is not furnished in Section 3, or if a withholding election is not selected, we are required by Federal law to withhold 10% of any taxable gain that may result from this transaction. Mandatory 20% Federal income tax must be withheld for all tax-sheltered annuity payments. Amounts withheld will not be refunded by New York Life.

*I elect to have the following withholding option applied to this payment under this policy(s). (Please check only one option below.)*

☐ **NO** Federal or State income taxes will be withheld

☐ **BOTH** Federal and State income taxes will be withheld

☐ **ONLY** Federal income taxes will be withheld
*This option may not be available for residents of certain states.
See Income Tax Certification and Withholding section on page 6*

☐ **ONLY** State income taxes will be withheld

If you elected any of the options above in which taxes will be withheld, you can specify the tax withholding percentage (%) of each withdrawal you would like to have applied to Federal and/or State income tax withholding. If a specific tax withholding amount is not indicated below, we will withhold 10% for federal tax purposes and the state's minimum withholding (if applicable). **Please fill in items (1) and (2) below.**

**(1)** I would like to apply _____ % of the taxable portion to Federal Tax Withholding.

**(2)** I would like to apply _____ % of the taxable portion to State Withholding.

* If you elect to have Federal income tax withheld, we are required to withhold at least 10% of the taxable portion of the distribution. If your state requires withholding, we will withhold the state's minimum amount if you select an amount that is less than the minimum. Please see the Important State Income Tax Withholding information on page 6 for more information.

### 7. Beneficiary Signature

Any person who knowingly and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation. Please refer to the enclosed page entitled STATE VARIATIONS OF FRAUD WARNINGS for specific notices required in certain jurisdictions.

*Under penalties of perjury, I (as owner named) certify:* 1. My Social Security number or Tax ID number shown on this form is my correct taxpayer identification number; 2. I am not subject to backup withholding because (a) I am exempt from backup withholding; (b) I have not been notified by the IRS that I am subject to backup withholding as a result of a failure to report all interest or dividend income; or (c) the IRS has notified me that I am no longer subject to backup withholding; 3. I am a U.S. person (includes a U.S. resident alien), and 4. The FATCA code entered on this form (if any) indicating that I am exempt from FATCA reporting is correct. (Please note: If being submitted for a U.S. account, this last certification (4) does not apply.)

☐ Check this box if the IRS has notified you that you are subject to backup withholding.

If you are a U.S. entity, you must submit a completed IRS Form W-9. If you are not a U.S. citizen, U.S. resident alien or other U.S. person, you must submit the applicable Form W8 with this form to certify your foreign status and, if applicable, claim treaty benefits. If you are not a U.S. person, your signature below only applies to the provisions of this document other than the provisions contained in this Owner Tax Certification section.

The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

| X ~signature~ | Timothy B. Clevenger | 9-18-18 |
|---|---|---|
| **Signature (Required)** | **Name (Printed)** | **Date** |

| X | | |
|---|---|---|
| **Signature (if required)** | **Name (Printed)** | **Date** |

SEP19'18 AM11:40 D1